*PENDLETON, President,
delivered the resolution of the court as follows:
The testator having made several specific devises, and being about to bestow the rest of his property, there was one species of it which he wished to exempt from the general disposition he intended to make of the residuum, namely, his slaves; whom he desired to manumit. .But as the law did not, at that time, permit emancipation, and it was uncertain whether application, for that purpose, to the legislature, would be successful, there was a necessity for some provision in case the effort should be disappointed. Accordingly, he directed that his executors should endeavour to procure an act of emancipation from the legislature ; but if the attempt failed, a specific bequest of part of the slaves was made, and the rest delivered to the same legatees to whom he gave the general residuum.
In this view of the subject it would seem to be unimportant with respect to the disposition of the surplus, whether the slaves were ever emancipated or n.ot, as they were not to lead, but to follow, the devise of the residuum.
It was said, however, that the contin *793 gency ran through the whole devise, and that the bequest was to depend upon the issue of the attempt to manumit the slaves: so that, if that failed, the residuum, of which the slaves were to be part, was to be divided among the residuary devisees; but, if it succeeded, no disposition of the residuum was made: And, therefore, as'the latter event had taken place, that the whole of the undevised lands descended upon the appellant as heir at law to the testator.
That view of the case, however, the court thinks is not sustainable. For no reason can be assigned, why the testator should leave the surplus entirely undisposed of, unless the attempt to manumit the slaves should fail. On the contrary, the residuary devisees were favourite relations, and he could have had no motive to disappoint them as to the whole subject, merely because the slaves might not, in event, belong to it. His primary object was to bestow the residuum; *and, whether the slaves would take the same course, was a secondary consideration with him. Accordingly, the bequest, as to them, is not so much a devise of the' property as of the possibility; part of which, if the emancipation failed, was to go to Mr. Tabb, and the rest to the residuary legatees, along with the general surplus.
What was said about the contingency, therefore, may be thrown out of the case: and then the question is, Whether all the residuum, both real and personal, passed by the devise?
The word property, we think, comprehends every thing that had not been disposed of. For, generally speaking, it is just as applicable to lands as to personalty; and there is nothing, in this will, to confine it to the personal estate. Including the slaves in the devise has not that effect. For it is not a bequest of the residue of the property followed with an enumeration of personal articles only; but the parts of the devise are kept separate and distinct, the slaves being mentioned first, and the other property afterwards : thus leaving the word property unrestrained, and to operate, according to the usual sense of the term.
It is equally clear that the whole interest in the lands passed. For that is the natural import of the word property; which is, at least, as comprehensive as the terms “all my estate;” “all my worldly substance;” or “all my real effects:” And each of these has been held to carry a fee. Cowp. 299, 355. But the case of Huxtep v. Brooman, 1 Bro. Ch. C. 437, is perhaps stronger. There the devise was, “I give and bequeath to Mary, daughter of Mary I-Iuxtep, and likewise to the son and daughter of Susan Topley, all the overplus of my money; and likewise beg of my executor, that he will pay, into the hands of the above children’s friends, all the money that is due to me on settling my father’s account. I give and bequeath, to them, all I am worth, except £2Q, which I give to my executor, Mr. Thomas Brooman.” The testator was entitled to a share, with his brothers, in a gavelkind estate which had ^descended from his father: And it was held by the lord chancellor, that the terms “all I am worth,” without other words to control them, passed the real as well as the personal estate.
That case contained a mixture of real and personal estate, and is very like the present, as the words “all I am worth,” are not more comprehensive than the words “all'my other property.”
The court is therefore unanimously of opinion that the judgment should be affirmed.

See Read v. Payne, 3 Call 225.